01
02
03
04
05
06
07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08
09

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  CR04-128 MJP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| CARL ALEXANDER HARRIS, | ) | AS TO ALLEGED VIOLATIONS |
| | ) | OF SUPERVISED RELEASE |
| Defendant. | ) | |
| _____ | ) | |

10
11
12
13
14
15
16

An evidentiary hearing on a supervised release revocation in these cases was scheduled before the undersigned Magistrate Judge on August 31, 2006.  The United States was represented by Assistant United States Attorney J. Tate London, and the defendant by Mr. Barry L. Flegenheimer.  The proceedings were recorded on cassette tape.

17
18
19

The defendant had been convicted of the charges of Making, Uttering and Possession of Counterfeit Securities.  On October 29, 2004, he was sentenced by the Honorable Marsha J. Pechman to a term of two hundred thirty-three (233) days in custody, followed by three (3) years of supervised release.

20
21
22
23

The conditions of supervised release included the requirement that the defendant comply with all local, state, and federal laws, and with the standard conditions.  Other special conditions included that the defendant submit to mandatory drug testing pursuant to 18

24
25
26

REPORT AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE AS TO ALLEGED
VIOLATIONS OF SUPERVISED RELEASE
PAGE 1

U.S.C. § 3563(a)(5) and 18 U.S.C. § 3583; abstaining from the use of alcohol, and other intoxicants during the term of supervision; abstaining from new lines of credit without approval of the probation officer; having no identification other than in his legal true name; and restitution in the amount of $45,000.

In an application dated July 28, 2005, Senior U.S. Probation Officer Jennifer J. Tien asserted the following violations of the conditions of supervised release:

(1)     Using marijuana on or before July 13, 2005, in violation of the general condition that the defendant not use illegal substances.

(2)     Failing to report for urinalysis testing on July 13, 18, and 26, 2005, as instructed via the drug code-a-phone, in violation of the special condition of drug aftercare.

(3)     Failure to report to Community Corrections Center on July 27, 2005, in violation of the special condition that he reside in and participate in the CCC for up to 180 days.

In an application dated February 14, 2006, Senior U.S. Probation Officer Jennifer J. Tien asserted the following supplemental violations against the defendant:

(4)     Possession of a stolen firearm, in violation of RCW 9A.56.140 and in violation of the special condition and general condition that the defendant not possess a firearm, a destructive device, or any other dangerous weapon or commit any federal, state or local crimes.

(5)     Possession of crack cocaine, in violation of the Uniformed Controlled Substances Act (VUCSA) and, in violation of the general condition that the defendant not commit any federal, state or local crimes and he not illegally possess a controlled substance.

(6)     Possession of ecstacy, in violation of the Uniformed Controlled Substances Act (VUCSA) and, in violation of the general condition that the defendant not commit any federal, state or local crimes and he not illegally possess a controlled substance.

(7)     Possession of suspected PCP, in violation of the Uniformed Controlled

REPORT AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE AS TO ALLEGED
VIOLATIONS OF SUPERVISED RELEASE
PAGE 2

01  Substances Act (VUCSA) and in violation of the general condition that the defendant not

02  commit any federal, state or local crimes and he not illegally possess a controlled substance.

03         (8)      Possession of Hydrocodone, in violation of the Uniformed Controlled

04  Substances Act (VUCSA) and in violation of the general condition that the defendant not

05  commit any federal, state or local crimes and he not illegally possess a controlled substance.

06         (9)      Associating with a known felon, Devontre Jackson, without permission of the

07  U.S. Probation Officer, in violation of the standard condition number 9.

08         At his initial appearance, the defendant denied the alleged violations, was advised of

09  his rights, and an evidentiary hearing was scheduled for August 31, 2006.  At the evidentiary

10  hearing, the defendant was again advised of his rights to an evidentiary hearing.  The

11  government dismissed alleged violations 7, 8, and 9.  The defendant admitted violations 1, 2,

12  and 3, and waived any right to a hearing as to whether these violations occurred.  An

13  evidentiary hearing took place with respect to alleged violations 4, 5, and 6.

14         The government called Seattle Police Officers Brooks and Hammermaster and Seattle

15  Police Detective Mooney as witnesses.  The government subpoenaed Seattle Police Officer

16  Nadel to appear, but he was unable to appear due to a birth in his family.  The defendant

17  testified on his own behalf and offered the declaration of Tanielle Jackson (Ex. 10), which

18  was received into evidence.  Ms. Jackson did not appear in person.

19         The following facts are undisputed.  On February 1, 2006, the defendant was riding as

20  a passenger in a 2000 Cadillac DeVille driven by Richard Davis.  Around 10 p.m. the car was

21  observed by SPD Officers Brooks and Hammermaster near the intersection of South Jackson

22  and 23rd Avenue South in Seattle.   The SPD Officers followed the car on 23rd Avenue

23  South,  determining that the car had exceeded the legal speed limit, was making weaving

24  maneuvers without signal, and making improper turns.  The DeVille turned right on to

25  Massachusetts and stopped at a light at Rainier.  Shortly after the light turned green, the

26  officers turned on their lights and the DeVille stopped after turning on to 17th Avenue S.

REPORT AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE AS TO ALLEGED
VIOLATIONS OF SUPERVISED RELEASE
PAGE 3

01    Officer Brooks approached the driver's side of the DeVille, and Officer

02 Hammermaster approached the passenger's side of the vehicle.  When asked for his name,

03 the defendant initially gave the name of his uncle, because he knew there was a warrant

04 outstanding for his initial pretrial supervision violation.  He subsequently advised Officer

05 Hammermaster of his true identity and taken into custody.  Richard Davis was also wanted

06 on an outstanding warrant, so he, too, was taken into custody.

07    SPD Officers Brooks and Davis were joined by SPD Officer Nadel.  A visual

08 inspection of the DeVille, incident to the arrests, followed.  The inspection revealed a pass-

09 through compartment between the rear-passenger seat and the trunk of the vehicle, which

10 pass-through was open.  When shining a flashlight into the rear seat pass-through, a handgun

11 and a bag were observed.  The trunk was opened, and the handgun and bag were taken into

12 evidence.  Fingerprints were taken from the handgun.  However, the prints that were lifted

13 were not of sufficient quality to determine who had handled the handgun.  No prints were

14 taken or attempted to be taken from the bag.

15    Subsequent analysis indicated that the handgun was a Browning HiPower 9 caliber

16 pistol that had been reported stolen from its owner in Oak Harbor, Washington.  (Ex. 6).

17 The bag was thought to contain rock cocaine, MDMA, PCP, and hydrocodone.  After a lab

18 analysis was completed, it was determined that the bag contained 4.8 grams of a substance

19 containing cocaine, and thirty (30) pink tablets, weighing approximately 12.1 grams that

20 were found to contain MDMA.  The other tablets in the bag were not analyzed.  (Ex. 9).

21    The driver was found to have money on his person.  Mr. Davis did not have any

22 money on his person.  This matter was referred to the King County Prosecutor.  Due to

23 insufficient evidence, prosecution was declined.

24    The issue in this case, relating to alleged violations 4, 5, and 6,  is whether Mr. Davis,

25 as the passenger in the vehicle with no money on his person, can be found to have been in

26 control or constructive possession of the handgun and the drugs found in the car.  Both sides

REPORT AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE AS TO ALLEGED
VIOLATIONS OF SUPERVISED RELEASE
PAGE 4

have indicated that *U.S. v. Terry,* 911 F. 2d 272 (9th Cir. 1990) sets forth the controlling standard, the government by direct reference, and the defense by reference to the pattern instructions that are based on *Terry.* In *Terry,* the court held:

> To prove constructive possession, the government must prove a "sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the substance." . . . It is not the same as merely knowing the weapon is nearby. "The circumstances of each case must be examined to determine if there is 'such nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession.' "

*Id.* at 278, *quoting U.S. v. Cousins,* 427 F. 2d 382, 384 (9th Cir. 1970). In *Bettis v. U.S,* 408 F.2d 563 (9th Cir. 1969), the Ninth Circuit reversed a finding of guilt which required a beyond a reasonable doubt standard basis when the evidence against the defendant consisted of nothing more than that the passenger was seated in the car when it was stopped, that he helped unload the contents of the trunk when Customs Officers requested him to do so, and that he gazed at some foil-wrapped packages. The court held that this might be sufficient evidence to make an arrest at the scene as a probable party to the importation, but would not be sufficient to convict him of being a party to possession. *Id.* at 567.

Although there are many agreed facts, there are critical factual disputes that relate directly to the issue of control. The DeVille permits the passenger seat to recline to an almost horizontal position. Officer Brooks and Hammermaster testified that when they initially approached the DeVille, they didn't notice there was an passenger in the vehicle. It was not until they left their squad car and came close to the DeVille that they noticed that the defendant Harris was stretched out in a reclining position on the passenger seat. If this testimony is to be believed, then the clear inference is that Mr. Harris was attempting to place the bag and the gun into the trunk of the car, using the pass-through.

Mr. Harris denies that his seat was reclined. He testified that his seat was in a full-up position, and that he partially rolled down his window to speak with Officer Hammermaster

REPORT AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE AS TO ALLEGED
VIOLATIONS OF SUPERVISED RELEASE
PAGE 5

01  as he approached the vehicle.  He also testified that he was unaware of the pass-through

02  section to the trunk.  He further testified that because he didn't trust the Seattle Police, he

03  called a friend, Tanielle Jackson, who was the cousin of the driver when they noticed they

04  were being followed by the SPD unit.  They decided to drive to her house, and the DeVille

05  came to a stop near her house.  Ms. Jackson submitted a declaration that indicated that she

06  did not see the car seat in other than an upright position.  Ms. Jacksons' declaration is not of

07  much assistance on this point, however, because she was not present when the DeVille was

08  stopped.  She was driving to her house.  The officers claimed that the defendant had already

09  been placed in custody when she arrived.  Ms. Jackson states in her declaration that "[w]hen I

10  arrived at my residence Richard Davis had just pulled up in front of my residence.  Richard

11  was in the drivers seat and Carl Harris was in the passenger seat.  There was a police car

12  parked behind them with lights flashing.  Two police officers were out of their cars."

13       Because this hearing is before the Court on a petition for violation of supervised

14  release, the government is required to prove the violations utilizing a preponderance of the

15  evidence standard.  The Court believes that the government has sustained this burden with

16  respect to the positioning of the seat.  Because of this, the violations at issue are also proven.

17       No plausible reason was offered for the SPD Officers to have fabricated seeing the

18  reclined seat on the passenger side.  On the other hand, the defendant does have motivation

19  for fabrication – to avoid prosecution on this matter.  Moreover, the admitted facts are

20  consistent with the seat being reclined.  The defendant knew a warrant was outstanding

21  against him.  If  caught with the drugs and the handgun, he was certainly aware that this

22  would cause a problem.  He testified that he was aware that he was being followed by a

23  police squad car, and called Ms. Jackson as a result.  Because he was being followed, there

24  was no opportunity to dispose of the illegal substances.  The pass-through to the trunk of the

25  DeVille was open, rather than being in a closed position, indicative of haste in trying to

26  conceal contraband.  Mr. Harris testified that Ms. Jackson was already at the house when they

REPORT AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE AS TO ALLEGED
VIOLATIONS OF SUPERVISED RELEASE
PAGE 6

01  stopped, to try to bolster the credibility of her declaration.  However, as noted above, she

02  acknowledged driving up to the house after the officers were already out of their squad car.

03         Seriously conflicting stories regarding whether the passenger seat was up or reclined

04  have been made in this case.  Utilizing a preponderance of the evidence standard, I find that

05  the government has satisfied its burden, and recommend that the Court find the defendant to

06  have violated his supervised release as alleged in violations numbers 4, 5, and 6.  Based on

07  his admissions, I also recommend that the Court find the defendant to have violated his

08  supervised release as alleged in violations numbers 1, 2, and 3.  As discussed above, alleged

09  violations numbers 7, 8, and 9 have been dismissed.

10         A disposition hearing has not yet been scheduled before the Honorable Marsha J.

11  Pechman.  Pending a final determination by the Court, defendant has been detained.

12         DATED this 1st day of September, 2006.

13

14

15  JAMES P. DONOHUE
    United States Magistrate Judge

16

17

18

19
20  cc:    District Judge:            Honorable Marsha J. Pechman
           ASA:                       Mr. J. Tate London
21         Defendant's attorney:      Mr. Barrie L. Flegenheimer
           Probation officer:         Ms. Jennifer J. Tien
22

23

24

25

26

REPORT AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE AS TO ALLEGED
VIOLATIONS OF SUPERVISED RELEASE
PAGE 7